**BROWN & CONNERY, LLP**
Christine P. O'Hearn, Esq.
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Jodee Lynn Shemonsky<br><br>    Plaintiff,<br>vs.<br><br>Gameloft, Inc. and Gameloft, S.A.,<br><br>    Defendants. | CIVIL ACTION NO. 09-cv-00943 (RMB/JS)<br><br>**AMENDED COMPLAINT** |

Plaintiff, Jodee Lynn Shemonsky, by way of complaint against defendants hereby states and alleges as follows:

**THE PARTIES**

1. Plaintiff, Jodee Lynn Shemonsky, is a resident and citizen of the State of New Jersey who presently resides as 4405 Grenwich Lane, Mt. Laurel, New Jersey 08054.

2. Defendants, Gameloft, Inc. & Gameloft S.A., 45 West 25th Street, 9th Floor, N.Y, N.Y.10010, are business entities engaged in the international development and publishing of games, video and other applications for mobile telephones and other devices with a principal place of business at the address stated above (hereinafter collectively referred to as "Gameloft").

## JURISDICTION

3. The Court has proper jurisdiction over this matter since the litigation involves a federal question arising under Title VII.

4. Plaintiff previously filed claims under Title VII and the New Jersey Law Against Discrimination with the Equal Employment Opportunity Commission, Philadelphia District Office and on or about February 17, 2009 received a Notice of Right to Sue which is attached as Exhibit A.

5. Further, diversity of jurisdiction exists between the parties.

6. Venue is proper since plaintiff resides in this District, defendants engage in business in this District and at all times while employed by defendants, plaintiff worked from a home office operated and located in this District at the address stated above.

## FACTUAL BACKGROUND

7. Plaintiff, was hired by defendants as a Key Account Manager on September 6, 2005 to work from a home-based office in Mt. Laurel, N.J.

8. Plaintiff was responsible for several national key customer accounts including Verizon Wireless and Virgin Mobile USA, both of whom have headquarters located in New Jersey.

9. In 2006, plaintiff was promoted to the position of Senior Account Manager in 2006 and received an increase of approximately 10%.

10. At all relevant times and upon information and belief, plaintiff was the only female employed in the position of Senior Account Manager.

11. The majority of defendants' employees are male and many are foreigners.

12. In or about June 2006, plaintiff's direct supervisor was Gonzague de Vallois, Vice President Worldwide Publishing who was based in the Gameloft's Paris, France location.

13. In or about January 2007, plaintiff began to experience what she reasonably believed was discrimination and harassment based upon her sex.

14. For example, in or about January 2007, plaintiff attended a business conference, the Consumer Electronics Show, in Las Vegas, NV with other Gameloft employees where clients and prospective customers were present. A company dinner was scheduled one evening which was to be attended by plaintiff, a male co-worker, Zach Smith, and a Gameloft client. Prior to the dinner, Mr. Smith called plaintiff to advise the dinner was changed to a Las Vegas strip club outing and that plaintiff's "invitation was no longer open." Even though plaintiff was willing to attend the outing if necessary for the business, she was told it would make others uncomfortable to have a female present and was excluded from this business outing.

15. On or about July 19, 2007, plaintiff wrote to Mr. deVallois by email expressing her frustration with working with Mr. Smith and advised Mr. Smith treated her differently than her male co-workers.

16. On or about October 18, 2007, plaintiff was excluded from a sales team meeting in New York City with Houssain Elguerit and all other male sales and marketing team counterparts.

17. On or about October 26, 2007, plaintiff wrote to Mr. de Vallois by email to complain she was excluded from an office related football pool organized by Mr. Smith as she felt she had been purposefully excluded as a female employee to

further isolate her from her male co-workers. Plaintiff reported she felt the work environment at Gameloft made her physically ill. She noted she was only female Senior National Account manager and felt male employees wanted to get rid of her because she was a woman.

18. On October 30, 2007, Mr. de Vallois responded to plaintiff's October 27, 2007 email stating he understood plaintiff's concerns but that if he took any action in response to her complaints, it would not change anything and "it could even worsen the situation." He advised her that "things will cool down with time." Mr. de Vallois took no action in response to plaintiff's complaints.

19. In or about October 2007, another male employee, Houssain Elguertit, during a discussion with plaintiff in the New York office related to an account, told her he would "bring me flowers if it would make me feel better." Plaintiff felt this was a condescending comment and would not have been said to a male employee.

20. On or about November 21, 2007, plaintiff again wrote by email to Mr. deVallois restating her complaints and concerns regarding Mr. Smith, the strip club incident, exclusion from meetings, etc. and asking to schedule a time to discuss the issues. Mr. deVallois did not respond to plaintiff's complaint.

21. On or about November 27, 2007, plaintiff wrote by email to Mr. deVallois stating "you haven't responded to any of my requests to talk about how uncomfortable and stressed I am as a result of Zach discriminating against me as a gal." Plaintiff complained of "severe fear and anxiety" around Mr. Smith and was being caused to suffer from stress. Mr. deVallois did not respond to plaintiff's complaint.

22. On or about December 4 or 5, 2007, while in the New York office, Mr. Smith came up from behind plaintiff and started rubbing her right shoulder causing her to be uncomfortable with this unwanted physical contact.

23. On or about December 7, 2007 at the company holiday party, Samir El Agili, a male co-worker, approached me and asked "why don't I get up on and dance on a table." Plaintiff was offended by this comment and thought this statement was inappropriate.

24. On or about December 11, 2007, plaintiff wrote to Mr. de Vallois by email and copied Mr. Guillemot, the CEO, to complain about the touching incident involving Mr. Smith on December 4, 2007 and about an inappropriate marketing campaign, "Lonely Valentine's Day" created by Mr. Smith and presented to a client which made her very uncomfortable. She also restated her earlier complaints made to Mr. deVallois and to which he had repeatedly failed to respond.

25. Gameloft had no sexual harassment or hostile work environment policy during any period of time plaintiff was employed.

26. Further, although there was a pre-printed type poster in its New York office related to the State's discrimination policies and procedures, the area which should identify the person to whom an employee should make a report or complaint are blank.

27. There was no policy or procedure at Gameloft which advised employees to whom they should make a complaint of harassment or discrimination.

28. Finally, in or about late December 2007, almost three (3) months after plaintiff first made any complaints of discrimination or hostile work environment, plaintiff

was advised that defendants would retain an outside attorney to conduct an investigation.

29. Plaintiff met with defendants' investigator and advised him of her concerns and complaints related to her employment.

30. Plaintiff made a request to be re-assigned to work with a different marketing manager other than Mr. Smith; requested the company to institute a diversity program, to require all employees be included in business related activities and for protection against retaliation for having made complaints.

31. By email dated January 29, 2008, more than more than three (3) months after having first made her complaints, plaintiff was provided with a copy of the written report of the investigation.

32. Instead of focusing on plaintiff's complaints about inappropriate behavior by others, the report focused on plaintiff and appeared to blame plaintiff for the instances which occurred. The report concluded plaintiff had not been excluded from work related activities because of her sex; the investigation was "inconclusive" with respect to plaintiff's claims of offensive touching and Mr. Smith watching her; the investigation substantiated an inappropriate comment was made to plaintiff during the 2007 holiday party; the investigation confirmed the relationship between plaintiff and Mr. Smith was "fractured" but concluded that sex did not appear play a role in the difficulties; and the investigation stated plaintiff was responsible for the difficult relationship with Mr. Smith.

33. The report addressed plaintiff's remaining complaints by describing them as "juvenile behavior or intemperate remarks but do not establish a hostile environment."

34. The investigator noted plaintiff's request for a "more professional working environment is a worthy one" and that defendants' workforce was "young and predominantly male" and that some of the actions at issue "reflect the immaturity of a young and unsophisticated workforce (e.g., nude swimming, flirtatious behavior)."

35. The investigator further noted defendants' company included a "sizeable number of non-Americans who may not share American sensibilities on these issues…"

36. On February 12, 2008, plaintiff's attorney sent correspondence to Gameloft outlining dissatisfaction with the investigation report and the way her complaints were handled.

37. On February 15, 2008, approximately two (2) weeks after Gameloft provided her with a copy of its investigation report regarding her harassment and discrimination complaints and three (3) days after her attorney had advised of her dissatisfaction in the investigation and report, plaintiff was summarily terminated from employment.

38. The letter of termination provided no reason for plaintiff's termination. Plaintiff was verbally told by a lawyer for Gameloft that her termination was for "business reasons." Plaintiff was told by the person who terminated her that he had no details related to her termination and that if she had questions to contact Mr. DeVallois.

39. Thereafter, another lawyer for Gameloft wrote to plaintiff advising she was terminated for "deficient and unacceptable performance."

40. Plaintiff never had a performance review during her employment.

41. Plaintiff received bonus monies virtually every quarter during her employment, including receipt of a bonus check on the date of her termination for the 4th quarter of 2007.

42. Upon information and belief, plaintiff was replaced by a male employee.

43. The stated reasons for plaintiff's termination were pretextual and plaintiff's termination was in retaliation for her having made complaints of sexual harassment and sexual discrimination.

## COUNT I – TITLE VII

44. Plaintiff hereby incorporates the previous allegations of her complaint as if set forth at length herein.

45. The actions of defendants as set forth above constitute discrimination, harassment and hostile work environment based upon sex and retaliation in violation of Title VII.

46. As a proximate result of such discrimination, harassment and hostile work environment, plaintiff has been caused to suffer damages including but not limited to lost wages, emotional distress, humiliation, embarrassment and other compensatory damages.

**WHEREFORE**, plaintiff demands judgment against defendants awarding plaintiff compensatory damages, punitive damages, costs of suit, attorneys' fees and such other relief as the Court deems just.

## COUNT II – NEW JERSEY LAW AGAINST DISCRIMINATION
### N.J.S.A. 10:5-1 et seq.

47. Plaintiff hereby incorporates the previous allegations of her complaint as if set forth at length herein.

48. The actions of defendants as set forth above constitute discrimination, harassment and hostile work environment based upon sex and retaliation in violation of The New Jersey Law Against Discrimination.

49. As a proximate result of such discrimination, harassment and hostile work environment, plaintiff has been caused to suffer damages including but not limited to lost wages, emotional distress, humiliation, embarrassment and other compensatory damages.

**WHEREFORE**, plaintiff demands judgment against defendants awarding plaintiff compensatory damages, punitive damages, costs of suit, attorneys' fees and such other relief as the Court deems just.

### COUNT I – NEW YORK STATE AND NEW YORK CITY CIVIL RIGHTS LAW

50. Plaintiff hereby incorporates the previous allegations of her complaint as if set forth at length herein.

51. The actions of defendants as set forth above constitute discrimination, harassment and hostile work environment based upon sex and retaliation in violation of the New York State Civil Rights Law, New York State Human Relations Law, Article 15 McKinney's Executive Law § 290 et seq.; and New York City Human Rights Law, N.Y.C. Administrative Code § 8.

52. As a proximate result of such discrimination, harassment and hostile work environment, plaintiff has been caused to suffer damages including but not limited to lost wages, emotional distress, humiliation, embarrassment and other compensatory damages.

**WHEREFORE**, plaintiff demands judgment against defendants awarding plaintiff compensatory damages, punitive damages, costs of suit, attorneys' fees and such other relief as the Court deems just.

## JURY DEMAND

Please **TAKE NOTICE** plaintiff hereby demands a jury trial as to all issues and claims.

BROWN & CONNERY, LLP
**Attorneys for Plaintiff**

/s/ Christine P. O'Hearn
_____
Christine P. O'Hearn

Dated: March 4, 2009

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

I hereby certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

BROWN & CONNERY, LLP
**Attorneys for Plaintiff**

/s/ Christine P. O'Hearn
_____
Christine P. O'Hearn

Dated: March 4, 2009